IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| METROPOLIS HOLDINGS, LLC, | Case No. 3:20-cv-00612-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| SP PLUS CORPORATION, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Metropolis Holdings, LLC ("Metropolis"), filed this action against SP Plus Corporation ("SP Plus"), on April 14, 2020, initially alleging claims for breach of contract and fraud. (ECF No. 1.) Now before the Court is SP Plus's motion for summary judgment or, in the alternative, for case-dispositive discovery sanctions. (ECF No. 54.)

The Court has jurisdiction over Metropolis's claims pursuant to 28 U.S.C § 1332, and all parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636. For the reasons discussed below, the Court grants SP Plus's motion for summary judgment.

///

///

PAGE 1 – OPINION AND ORDER

## BACKGROUND[1]

Independent Development Enterprise Alliance ("IDEA"), an Oregon nonprofit corporation, and Central Parking System of Washington ("CPS") entered into a ten-year General Partnership Agreement to form Portland Parking Associates ("PPA") on October 3, 2011. (Am. Compl. Ex. 1 ("PPA") at 1, ECF No. 51-1.) IDEA and CPS formed the PPA for the purpose of "operating, managing, and acquiring public parking management and revenue contracts, within a sixty (60) mile radius of Portland, Oregon." (PPA at 2.) Pursuant to the terms of the partnership agreement (also referred to herein as the "PPA"), IDEA would receive 30% of the net profits with CPS retaining the other 70%, IDEA would receive 80% of monthly cashflow, IDEA could request and inspect PPA's books, receipts, and records, and IDEA "may assign, without consent, its interest in the [PPA] to another legal entity provided that a majority of such entity's stock or other ownership interest is owned by Roy Jay." (PPA at 6-10.) One of the purposes of the PPA's payment arrangement was to share the PPA's profits with IDEA to advance IDEA's nonprofit mission, including to support Project Clean Slate. (Aff. of Roderick W. Woodruff ("Woodruff Aff.") ¶ 3, ECF No. 61.)

CPS and IDEA modified the PPA on April 24, 2013, in a Memorandum of Understanding ("MOU"). (Am. Compl. Ex. 2 ("MOU") at 1, ECF No. 51-2.) The MOU modified the PPA to require CPS to pay IDEA $10,000 a month as a fixed monthly partnership fee. (MOU at 1.) In 2012, Standard Parking Corporation acquired Central Parking Corporation, the parent company of CPS. (Decl. of Ritu Vig ("Vig Decl.") ¶ 3, ECF No. 56.) In 2013, Standard Parking Corporation changed its name to SP Plus. (Id.) Metropolis alleges that "sometime in the 2012-

---

[1] Unless otherwise noted, the following facts are either undisputed or viewed in the light most favorable to Metropolis.

2014 timeframe, IDEA's Board of Directors approved the transfer of [its interest in the PPA] to Metropolis[.]" (Woodruff Aff. ¶ 2.)

Metropolis's original complaint asserted breach of contract and fraud claims, alleging that SP Plus breached the PPA and MOU and committed fraud by failing to make the required payments. (ECF No. 1.) On June 1, 2020, Metropolis moved for partial summary judgment on its breach of contract claim. (ECF No. 14.) On June 5, 2020, SP Plus moved to dismiss Metropolis's fraud claim. (ECF No. 16.) On August 5, 2020, the Court denied Metropolis's motion for partial summary judgment and granted SP Plus's motion to dismiss the fraud claim. (ECF No. 39.)

On May 18, 2021, Metropolis filed an amended complaint, alleging breach of contract and seeking $7 million in damages and declaratory relief regarding several PPA and MOU terms. (ECF No. 51.) On June 1, 2021, SP Plus answered Metropolis's amended complaint and asserted a counterclaim for unjust enrichment, alleging that Metropolis and its sole member, Roy Jay, intentionally and improperly diverted PPA payments intended for IDEA, a nonprofit corporation, to Roy Jay's wholly-owned for-profit entity, Metropolis. (ECF No. 52.)

## ANALYSIS

### I.     STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). At the summary judgment stage, the court views the facts in the light most favorable to the non-moving party, and draws all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith*

PAGE 3 – OPINION AND ORDER

*Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## II.   DISCUSSION

SP Plus moves for summary judgment on Metropolis's breach of contract claim on several grounds, including that Metropolis has no valid interest in the PPA because IDEA never assigned its interest in the PPA to Metropolis and never provided notice of the assignment to SP Plus as required by the PPA's terms. (Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 3, ECF No. 54.) Metropolis argues, among other things, that disputed facts preclude summary judgment on the issues of assignment and notice of assignment. (Pl.'s Am. Resp. at 2, 8, ECF No. 65.) The Court finds that even if disputed facts remain regarding whether IDEA assigned its interest in the PPA to Metropolis,[2] no reasonable trier of fact could find that IDEA provided written notice to SP Plus of any such assignment, as required by the PPA.

### A.   Governing Law

Section 11.5 of the PPA contains a choice-of-law provision: "This agreement and the rights of the Partners shall be governed by and construed and enforced in accordance with the laws of the state of Tennessee." (PPA at 16.) Accordingly, the Court applies Tennessee law to

---

[2] Metropolis has not presented any documentary evidence of an assignment nor board minutes demonstrating that IDEA's board of directors approved an assignment. Instead, Metropolis relies on the affidavit of Roderick Woodruff who asserts that IDEA's board of directors approved the transfer of IDEA's interest in the PPA to Metropolis "sometime in the 2012-2014 timeframe." (Woodruff Aff. ¶ 2.) SP Plus argues that "the disparity between Woodruff's affidavit and his prior deposition testimony is so extreme that the affidavit amounts to a sham affidavit" and is therefore inadmissible. (Def.'s Reply at 5, ECF No. 67.) "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)). The Court need not reach the question of whether the sham affidavit rule applies here, but recognizes that Mr. Woodruff's affidavit materially contradicts—without explanation—his prior testimony regarding his knowledge of whether IDEA assigned its interest in the PPA to Metropolis.

PAGE 4 – OPINION AND ORDER

interpret the terms of the PPA. *See, e.g.*, *Welles v. Turner Ent. Co.*, 503 F.3d 728, 734 (9th Cir. 2007) ("Because the Production Agreement contains a New York choice of law provision, we apply New York's principles of contract interpretation in deciding this issue.").

Under Tennessee law, the Court is required to "initially determine the parties' intent by examining the plain and ordinary meaning of the written words that are contained within the four corners of the contract[, and t]he literal meaning of the contract language controls if the language is clear and unambiguous." *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013) (simplified).

### B. The PPA's Assignment Clause Requiring Written Notice of Transfer

Article IX, Section 9.2 of the PPA, titled "Transfers of Interest," provides that IDEA may assign its interest in the PPA without consent, but requires that IDEA first deliver written notice to CPS and the Partnership:

> Except as hereinafter provided, no transfer of a Partnership Interest shall be made except on the following conditions . . . (c) [IDEA] may assign, without consent, its interest in the Partnership to another legal entity provided that a majority of such entity's stock or other ownership interest is owned by Roy Jay. . . . (d) [w]ith respect to any proposed voluntary transfer to a third party[, (1) t]he transferring Partner shall deliver written notice to the other Partner and to the Partnership, which notice shall state the name of the prospective purchaser and the price and terms offered by such prospective purchase . . . .

(PPA at 10.) The PPA further provides that "[a]ny . . . transfer . . . of any Partnership Interest shall be null and void unless made strictly in accordance with the provisions of this Article [IX]." (PPA at 13.) Section 11.2 of the PPA instructs that any required notice "shall be in writing, signed by the Party giving the same, and shall be deemed properly given when actually received or when mailed, if sent by registered or certified United States mail, postage prepaid, addressed: [to specific addresses provide for each entity]." (PPA at 15.)

Despite this language, Metropolis suggests that the PPA did not require written notice of an assignment, citing Section 9.2(c) of the PPA allowing an assignment without consent. (Pl.'s. Am. Resp. at 9.) Metropolis overlooks the clear and unambiguous language of Section 9.2(d), which expressly requires that "with respect to any proposed voluntary transfer [of an interest in the PPA] to a third party," the transferring party "shall deliver written notice to the other Partner and to the Partnership[.]"[3] (PPA at 10.) IDEA's purported assignment of its interest in the PPA to Metropolis was a voluntary transfer to a third party, which triggered Section 9.2(d)'s written notice requirement.

The Court finds that under the clear and unambiguous language of the PPA, IDEA was required to notify SP Plus in writing of any voluntary transfer of IDEA's interest in the PPA to Metropolis.

### C.   Metropolis's Evidence Regarding Written Notice of Assignment

Metropolis asserts that SP Plus's "Exhibits 3 through 5 show written notice of the transfer" of interest in the PPA to Roy Jay's "contact" at SP Plus, Malisa McCreedy. (Pl.'s. Am. Resp. at 11.) Metropolis appears to be referring to the exhibits attached to the declaration of Ritu Vig. (*See* Vig Decl., Exs. 3-5.) There is no evidence of written notice of the assignment in those records.

Exhibit Three is an October 21, 2014 email on IDEA letterhead from "roy@smartparkgarages.com" to two SP Plus email addresses (but not to Malisa McCreedy), stating "Authorization to Make Monthly Direct Deposit to our Vendor Account," and a follow-up message from Roy Jay, "Thank you for making the change immediately." (Vig Decl., Ex. 3.)

---

[3] Similarly, Under Tennessee law, "[a] partnership need not give effect to a transferee's rights under this section until it has notice of the transfer." TENN. CODE ANN. § 61-1-503.

This exhibit contains no "written notice of transfer" to "Malisa McCreedy," or anyone else, as Metropolis alleges. (*See* Pl.'s Am. Resp. at 11.)

Exhibit Four is an eight-page email string from "Roy@royjay.com" to "mmcreedy@spplus.com":

- On September 5, 2014, Roy Jay states, "I need to have the monthly allocation sent to a new bank account. Who do I send the routing and account number to[?]" (Vig Decl., Ex. 4.)

- On September 8, 2014, Malisa McCreedy responds in an email with the subject line "Change Bank Account," with "Hi Roy, Please send the information to Kristie Stone and I. She will handle ensuring the information is provided to the right people." (*Id*.)

- On September 24, 2014, Roy Jay responds, "Kristie.. I am out of town until october 6 but can forward you the new routine [sic] number and bank account within a few hours. I need for this to go into effect immediately so the next deposit will be posted about the 2nd or 3rd of the month," responding shortly thereafter with, "Kristie… here is the new account information. The account is with Bank of America." (*Id*.)

- Also on September 24, 2014, Marc Lenihan, identified in his email signature as Director of Treasury Operations for SP Plus, informs Kristie Stone that "to finalize set-up we will need a document on either the client's or financial institution they bank with letterhead indicating the account the funds need to go to." (*Id*.)

- On September 25, 2014, Kristie Stone passes along the information to Roy Jay, asking for his request to be "on your company's letterhead or the bank[']s letterhead." (*Id*.)

- Nearly one month later, on October 21, 2014, Roy Jay responds from a different email account, "royjay@gmail.com," "Kristi.. [sic] sorry to do this again.. but we -- established a new vendor account.. Can you send our payments for direct deposit to: (effective immediately) [routing and account number]." (*Id*.)

- Kristie Stone forwards Roy Jay's request to SP Plus accountant San Chan. (*Id*.)

- San Chan informs Roy Jay again that, "our Treasury department . . . cannot process your request unless the request is in the form of your letterhead . . . ." (*Id*.)

- On November 2, 2014, Roy Jay sends—on IDEA letterhead—a "NOTICE OF CHANGE OF FEDERAL TAX ID" stating, "[p]lease update your records to

PAGE 7 – OPINION AND ORDER

> include our vendors new tax identification number as listed below . . . [p]lease continue to mail all statements and communications to 9159 SE Anton Court Happy Valley, OR 97086-3015," and signed by "Roy Jay, Director/Manager." (*Id.*)

Exhibit Five is substantially the same email string as Exhibit Four, with the addition of San Chan requesting that Roy Jay provide an "updated W9." (Vig Decl., Ex. 5.) Roy Jay provides a W9, signed on November 3, 2014, with the company name listed as "Metropolis Holdings, LLC" but the business name, "if different from [company name]," listed as "[IDEA]." (*Id.*)

The Court finds that no reasonable trier of fact could conclude that these exhibits include written notice to SP Plus of a transfer of IDEA's interest in the PPA to Metropolis. The emails include no mention of an assignment or transfer of interest, let alone in conformance with the PPA's notice requirements. On the contrary, Roy Jay continues to communicate with SP Plus using IDEA letterhead, vaguely references sending the payments to IDEA's new "vendor," incorrectly represents on the W9 that Metropolis is doing business as IDEA, a nonprofit entity, and fails to disclose that he is asking SP Plus to redirect payments from the nonprofit IDEA to his own LLC. No reasonable juror could view this evidence as written notice to SP Plus of an assignment of IDEA's interest in the PPA to Metropolis.

The Court finds that Metropolis has presented no evidence that IDEA provided SP Plus with written notice of an assignment of IDEA's interest in the PPA to Metropolis, as required by the clear and unambiguous language of PPA Section 9.2. The bargained-for PPA requires that any transfer of interest "shall be null and void unless made strictly in accordance with the provisions of this Article [IX]." (PPA at 13.) Under the plain language of the contract, the transfer of interest in the PPA from IDEA to Metropolis, if any, is void and unenforceable.

PAGE 8 – OPINION AND ORDER

Accordingly, Metropolis has no contractual relationship with SP Plus and its breach of contract claim necessarily fails in the absence of a valid contract.[4]

## CONCLUSION

For the reasons stated, the Court GRANTS SP Plus's motion for summary judgment. (ECF No. 54.) Counsel shall confer regarding the status of SP Plus's counterclaim and file a joint status report by January 19, 2022.

DATED this 29th day of December, 2021.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[4] In light of the Court's holding, it need not address SP Plus's other summary judgment arguments. However, had the Court not resolved Metropolis's claim on the merits, the Court would have imposed sanctions for Metropolis's failure to comply with the Court's discovery order. (*See* ECF No. 50.)

PAGE 9 – OPINION AND ORDER